UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ariel Hod,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MEDTRONIC MINIMED, INC. ET AL,<br><br>　　　　　　Defendants. | CASE NO. 2:23-cv-07154-JLS-PVC<br><br>**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT (Doc. 71); AND (2) GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD (Doc. 69)** |

Before the Court are two unopposed Motions filed by Plaintiff: one seeking final approval of class settlement, another seeking attorneys' fees, costs, and a class-representative service award. (Final Approval Mot., Doc. 71; Final Approval Mem., Doc. 71-1; Fees Mot., Doc. 69; Fees Mem., Doc. 69-1.) The Court held a final fairness hearing on July 11, 2025. At the hearing, the Court requested documentation of Plaintiff's Counsel's incurred litigation expenses. The Court also requested additional information as to whether it was reasonably possible to provide Class Notice to certain Class Members to whom the Settlement Administrator could not send an emailed notice. Plaintiff submitted a response to the Court's requests on August 8, 2025. (Second Supp. Brief, Doc. 74.)

In light of that response, and having held oral argument and considered the briefs and evidence in support thereto, the Court now GRANTS Plaintiff's motion for final approval and GRANTS IN PART Plaintiff's motion for attorneys' fees, costs, and a service award.

## I.   BACKGROUND

The Court detailed the background facts of this action in its Order conditionally granting preliminary approval of the class action settlement ("Conditional Preliminary Approval Order"). (*See* Conditional Prelim. Approval Order, Doc. 62.) In brief, Plaintiff initiated this class action against Defendants Medtronic MiniMed, Inc. and MiniMed Distribution Corp., (collectively, "Defendants" or "MiniMed") asserting various claims arising out of Defendants' alleged transmission and disclosure of his and Class Members' personally identifiable information ("PII") and protected health information ("PHI") (collectively referred to as "Private Information"). (Compl., Doc. 1.) Plaintiff alleges that Defendants disclosed Private Information to Google LLC d/b/a Google and other third parties via tracking and authentication technologies installed on Defendants' website, InPen Diabetes Management iOS, and InPen Android mobile applications (the "InPen App" and, collectively, the "Digital Platforms"). (*Id.*)

### A. Procedural History

Following Plaintiff's filing of his Complaint, Defendants filed a motion to compel arbitration and to dismiss all proceedings. (Docs. 28, 30.) The parties then filed a stipulation to stay the case pending a formal and confidential mediation before Retired United States Magistrate Judge David C. Jones. (Doc. 41.) The Court granted the stipulation, partially stayed the case to permit the parties to proceed with their negotiations and mediation, and deemed the motion to dismiss withdrawn. (Doc. 43.)

Following mediation, the parties reached a class-wide settlement in principle and requested that the Court extend the stay of the case to allow the parties to finalize the settlement terms and Plaintiff to file a motion for preliminary approval. (Doc. 45.) The Court stayed the action "until [its] approval of the settlement agreement is fully resolved." (Doc. 46.) Thereafter, Plaintiff filed his Motion for Preliminary Approval of Class Action Settlement. (Mot. for Prelim. Approval, Doc. 50.)

At the hearing on Plaintiff's Motion for Preliminary Approval the Court raised several questions regarding the settlement, including whether Plaintiff had engaged in discovery to confirm what Private Information was disclosed by Defendants to third-parties and why no injunctive relief was included in the proposed settlement. (Transcript at 6–7, 9–11, Doc. 57.) The Court also questioned why the proposed settlement required class members to submit claims for recovery and what the general rate of response was on claims made in similar actions. (*Id.* at 7:17–20, 8:16–17.) In response to the Court's claims rate inquiry, Counsel represented that they "would expect at least a 5 percent claim rate; possibly 10" in this case. (*Id.* at 8:23–24.) Following the hearing, the parties filed a stipulation for Plaintiff to submit a brief further addressing the Court's questions. (Doc. 55.) The Court granted the stipulation, (Doc. 56), and Plaintiff submitted his supplemental brief. (First Supp. Brief., Doc. 61.)

Plaintiff's supplemental brief addressed the concerns the Court raised at the preliminary approval hearing, and informed the Court that, following the hearing, the

parties engaged in Rule 408 discovery to verify the nature and scope of Defendants' users' data elements potentially collected by various Google technologies. (*Id.* at 2.) This discovery confirmed that "no names, telephone numbers, dates of birth, testing results, or sensitive medical information was collected or disclosed by the Google Technologies, that the data elements accessible to the Google Technologies ultimately were used only internally by [Defendants], and that Defendants had instituted controls to prevent the disclosure of sensitive information through the InPen App." (*Id.* at 2–3.) Furthermore, "[n]one of the information accessible to any of the Google Technologies was used for marketing, advertising or re-targeting users, and any information received by Google … was used solely to provide the relevant contracted-for services to [Defendants]—e.g., crash reports, facilitating optimal operation of the InPen App, [and] authenticating users[.]" (*Id.* at 3.)

On January 10, 2025, the Court conditionally granted Plaintiff's motion for preliminary approval, pending the submission of an amended Settlement Agreement and Class Notice. (Conditional Prelim. Approval Order.) Plaintiff filed an amended Settlement Agreement and Class Notice on January 21, 2025. (Doc. 63; *see also* Second Amended Settlement Agreement.) On January 31, 2025, the Court issued an Order informing Plaintiff that the amended short and long form class notices did not fully address the concerns the Court raised in its Conditional Preliminary Approval Order. (Doc. 64.) Specifically, the Court stated that neither the amended short or long form notice clearly set forth that Class Counsel's motion for attorneys' fees and costs would be filed before the deadline to object or opt out; furthermore, the short form notice failed to state that Class Members could exclude themselves from the Settlement via the Settlement website. (*See id.* at 1.) The Court ordered the parties to submit second amended notices that fully complied with its Conditional Preliminary Approval Order. (*Id.*) Plaintiff submitted second amended short and long form class notice forms on February 5, 2025. (Doc. 65.) The second amended short form notice remained deficient, and the Court issued a further

4

Order directly providing the required modifications. (Doc. 66.) On February 12, 2025, Plaintiff submitted a third amended short form notice that adhered to the Court's Conditional Preliminary Approval Order. (Doc. 67.) The Court thereafter granted Plaintiff's Motion for Preliminary Approval of Class Settlement on February 17, 2025. (Prelim. Approval Order, Doc. 68.)

The Court's Order Granting Preliminary Approval conditionally certified the following Rule 23(b)(3) class for settlement purposes: "all registered InPen App users who, from September 2020 through April 13, 2023, used MiniMed's Digital Platforms while residing in the United States." (Prelim. Approval Order at 2; *see also* Conditional Prelim. Approval Order at 5–6.) The Settlement Class contains 58,948 Class Members. (Lechner Decl. ¶ 7, Doc. 71-2; Final Approval Mem. at 13.)

### B. The Settlement and Class Notice

The Settlement Administrator, Simpluris, Inc., sent the short form notice to 54,475 Settlement Class Members for whom it had valid email addresses on March 21, 2025. (Lechner Decl. ¶¶ 8–9.) Of those emails, 54,066 were reported successfully delivered, and 409 were reported as "bounced-back" and deemed undeliverable. (*Id.* ¶ 10.) Notice was provided by email because "Class Members are users of the Medtronic InPen mobile application" and thus "the contact information provided by Class Members to access the application consisted of their names and email addresses." (Second Supp. Brief at 2.) At the final fairness hearing, the Court inquired as to the possibility of providing an alternate form of notice to those approximately 4,882 Class Members for whom Simpluris did not have a valid email address. Plaintiff's supplemental briefing states that it is not possible to provide notice to these Class Members because Defendants' application "is not capable of sending targeted push notifications" and "many of the Class Members whose emails are no longer active likely are not current users" of the InPen App. (*Id.* at 2.) Further, Simpluris "confirmed that it was not possible" to use these Class Members' existing available contact information to identify supplemental contact information, such as a physical address. (*Id.* at

5

2–3; *see also* Supp. Lechner Decl. ¶ 6, Doc. 74-1.)  In all, the direct settlement notice rate was 91.72%.  (Second Supp. Brief at 3.)

Simpluris also published the Settlement website advising Settlement Class Members of their right to submit a claim, request exclusion from the Settlement, object to the Settlement, or do nothing, and the implications of each action.  (Lechner Decl. ¶ 11.)  The Settlement Website made available various Settlement-related documents, including the long form class notice and Settlement claim form.  (*Id.* ¶ 12.)  The deadline to opt-out or object was May 22, 2025.  (Prelim. Approval Order at 5–6.)  That deadline has now passed, and Simpluris received no requests for exclusion and no requests for objections.  (Lechner Decl. ¶ 16; Final Approval Mem. at 8.)  The deadline to postmark a claim form was June 21, 2025.  (Prelim. Approval Order at 6.)  As of May 30, 2025, Simpluris received 622 claims, all of which were deemed valid.  (Lechner Decl. ¶ 17.)  At the hearing, Class Counsel stated that between May 30, 2025, and the claims submission deadline of June 21, 2026, Simpluris received an additional 21 claims, 19 of which were deemed valid and 2 of which were duplicative.  In total, Simpluris received 641 valid claims.

On March 7, 2025, Simpluris provided notice of the proposed Settlement to the appropriate state and federal Attorneys General pursuant to the Class Action Fairness Act of 2005 ("CAFA") and 28 U.S.C. § 1715.  (*Id.* ¶ 4.)

Defendants agreed to pay $475,000 under the Settlement.  (Second Amended Settlement Agreement ¶¶ 16.mm, 20.)  That amount will be used to distribute pro-rata payments to Settlement Class Members, and to cover settlement notice and administration costs, taxes, service awards, attorneys' fees, litigation costs, and any *cy pres* payment.  (*Id.* ¶¶ 11, 24.)  Simpluris estimates that notice and settlement administration costs will total $24,968.  (Lechner Decl. ¶ 21.)  Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award seeks (1) $158,333 in attorneys' fees, representing 33.3% of the Settlement Fund; (2) $5,588.44 in litigation costs; and (3) a service award for the Class Representative in the amount of $5,000.  (Fees Mot. at 2.)  The funds remaining—approximately $281,110.56 if

all other payments are approved prior to payment of any taxes owed—will be distributed to Settlement Class Members who submit a valid and timely claim form as relief for all remaining claims.[1] (Second Amended Settlement Agreement ¶¶ 16.q, 30; Nelson Decl. ¶ 22, Doc. 69-1.) The amount of each *pro rata* settlement payment shall be calculated by dividing the Net Settlement Fund by the number of valid claimants. (Second Amended Settlement Agreement ¶ 40.) Settlement payments will be mailed to the address Settlement Class Members provide on their claim form, and Settlement Class Members will have 90 days to cash their checks. (*Id.* ¶ 41.) For any mailed settlement payments returned, Simpluris will make reasonable efforts to find a valid address for the Settlement Class Member and resend the settlement payment within 30 days after the check is returned to Simpluris as undeliverable. (*Id.* ¶ 43.) To the extent any funds remain in the Net Settlement Fund following the first distribution of payments to Settlement Class Members who submit a timely and valid claim form, a subsequent settlement payment will be evenly distributed to all such Settlement Class Members who cashed or deposited the initial payment received, provided that the average check amount is equal to or greater than three dollars ($3.00). (*Id.* ¶ 42.) The distribution of the remaining Net Settlement Fund will continue in this manner until the average check amount in a distribution is less than three dollars ($3.00). (*Id.*) Any uncashed funds remaining after the *pro rata* distribution will be distributed to a *cy pres* recipient. (*Id.* ¶ 11.e.) The parties propose the International Association of Privacy Professionals, a 501(c)(3) charitable organization, as the *cy pres* recipient. (*Id.* ¶¶ 11.e, 16.ff.) Using the number of valid claims received by June 21, 2025, and an approximate amount of $281,110.56 remaining in the Settlement Fund after all other payments are distributed, the Court estimates that the Settlement

---

[1] Both the Lechner declaration and Nelson declaration submitted in support of Final Approval state that the Net Settlement Fund would be approximately $271,699. (Lechner Decl. ¶ 19; Nelson Decl. ¶ 22, Doc. 69-1.) The Court understands this to be based on the initial expectation that requested litigation costs would be $15,000. (*See* Lechner Decl. ¶ 19.) However, Plaintiff's motion for fees requests $5,588.44 in litigation costs, thus altering the approximate value of the Net Settlement Fund.

Agreement provides $438.55 per Class Member who submitted a timely and valid claim form.

In return for the relief described above, Plaintiff and each Settlement Class Member will release certain claims against Defendants, including "any and all past, present, and future claims … that arise out of, or are based upon or connected to, or relate in any way to Defendants' use of Third-Party Technologies on the Digital Platforms, the allegations in the Complaint, or any other claims that were or could have been asserted in the Litigation[.]" (Second Amended Settlement Agreement ¶¶ 84, 85.) Released claims also include "claims relating in any way to the subject matter of the Complaint that could have been raised in the Litigation and that Plaintiff … do[es] not know to exist or suspect to exist[.]" (*Id.* ¶ 86.)

The Court's Preliminary Approval Order concluded that Named Plaintiff Ariel Hod was an adequate Class Representative, and appointed John Nelson of Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"), Jonathan Deters of Markovits, Stock & DeMarco, LLC ("Markovits"), and Bryan Bleichner of Chestnut Cambronne PA to serve as Class Counsel. (Prelim. Approval Order at 2; *see also* Conditional Prelim. Approval Order at 15.) The Court's Preliminary Approval Order approved Simpluris as the Settlement Administrator. (Prelim. Approval Order at 2; *see also* Conditional Prelim. Approval Order at 25.)

## II. **CERTIFICATION**

In its Preliminary Approval Order, the Court conditionally certified the Class under Rule 23(b)(3). (*See* Prelim. Approval Order at 2; Conditional Prelim. Approval Order at 8–15.) Nothing since the Preliminary Approval Order counsels the Court to depart from its previous conclusions on the existence of a proper Settlement Class. The Court therefore incorporates its class certification analysis from the Conditional Preliminary Approval Order into the current Order. (Conditional Prelim. Approval Order at 8–15.)

### III.    FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

#### A.    Legal Standard

Before approving a class-action settlement, the Court must determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) provides that a "court may approve" a class action settlement proposal "after considering whether:"

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3)[2]; and
> (D) the proposal treats class members equitably relative to each other.

These factors were codified in the Federal Rules of Civil Procedure in 2018 in recognition of the fact that "[c]ourts have generated lists of factors to shed light on" the fairness, reasonableness, and adequacy of the proposed settlement. Fed. R. Civ. P. 23 advisory committee's note to 2018 Amendment. Indeed, the Ninth Circuit's articulated list of factors has governed settlement approvals in the Circuit for over forty years. *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Those factors overlap in many ways with the Rule 23(e)(2) factors, and include: "[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental

---

[2] Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

9

participant; and [8] the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (cleaned up). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. Here, the Court relies on the Rule 23(e)(2) factors but uses some of the developed guidance regarding the application of the Ninth Circuit's factors where relevant.

In addition to these factors, the Court must also satisfy itself that "settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (cleaned up). Accordingly, in any class action settlement, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (cleaned up).

### B. Analysis

In its Conditional Preliminary Approval Order, the Court evaluated all the factors identified above to determine whether the Settlement Agreement is fair, reasonable, and adequate under Rule 23. (*See* Conditional Prelim. Approval Order at 17–25.) The Court determined that all of Rule 23(e)(2)'s factors weighed in favor of approval. (*Id.*) The Court was also satisfied that there were no signs of collusion between the parties, but noted that Plaintiff's Counsel planned to move for an award equal to one-third of the Settlement Fund. (*Id.* at 24.) The Court sees no reason to depart from its previous conclusion as to these factors. The Court therefore incorporates its analysis from the Conditional

Preliminary Approval Order into the instant Order.  (Conditional Prelim. Approval Order at 17–25.)

However, at the time of preliminary approval, the Court did not evaluate Settlement Class Members' reactions to the proposed Settlement Agreement.  *See Staton*, 327 F.3d at 959 (identifying "the reaction of the class members to the proposed settlement" as a factor to consider regarding settlement).  In support of final approval, Plaintiff submitted a supplemental declaration from Simpluris detailing Settlement Class Members' responses to the Class Notice.  (*See generally* Lechner Decl.)  As of May 30, 2025, Simpluris has received no requests for exclusion.  (*Id.* ¶ 16.)  Nor has Class Counsel received any objections to the Settlement.  (Nelson Decl. ¶ 8.)  Plaintiff's Counsel confirmed at the hearing on its motion that no objections or requests for exclusion have been received. "The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Graham v. Cap. One Bank (USA), N.A.*, 2014 WL 12579806, at *4 (C.D. Cal. Dec. 8, 2014) (Staton, J.) (cleaned up); *see also Sebastian v. Sprint/United Mgmt. Co.*, 2019 WL 13037010, at *5 (C.D. Cal. Dec. 5, 2019) (Staton, J.) (similar).

The Court also considers the claims rate in this action in assessing Class Members' reaction to the Settlement.  Here, that rate is "just over 1% of the Settlement Class."  (Final Approval Mem. at 14.)  This Court has observed that other district courts accept that "[t]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent."  *Munday v. Navy Fed. Credit Union*, 2016 WL 7655807, at *8 n. 1 (C.D. Cal. Sept. 15, 2016) (Staton, J.) (quoting *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014)); *but see Pollard v. Remington Arms Co.,* LLC, 320 F.R.D. 198, 214–15 (W.D. Mo. 2017) (collecting instances of district courts approving settlements "where the claims rate was less than one percent").  At the preliminary approval hearing, Counsel predicted a claims rate more in line with this "prevailing rule of thumb."  (*See* Transcript at 8:23–24.)  However, a claims rate near 1% is not out of line with claims rates

11

in data breach class actions approved by other courts within the Ninth Circuit. *See e.g., Carter v. Vivendi Ticketing US LLC*, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (approving settlement with a claims rate of 1.6% and collecting cases approving similar rates). Though the claims rate is at the low end for settlements approved by district courts, considering the absence of objections and requests for exclusion and the effectiveness of Class Notice, the Court concludes that this factor, too, weighs in favor of approval.

The Court is satisfied that the Settlement meets the Rule 23(e) requirements: the Class Representative and Class Counsel have adequately represented the Class, the proposal was negotiated at arm's length, the relief provided is adequate, and Settlement Class Members are treated equitably relative to each other. Similarly, having weighed the *Staton* factors and considered the Settlement as a whole, the Court finds that the proposed settlement is fair, reasonable, and adequate.

### IV. ADMINISTRATION COSTS

Plaintiff submitted along with his motion for final approval the Declaration of Amy Lechner, Program Manager at Simpluris. (*See generally* Lechner Decl.) The Lechner Declaration represents that Simpluris' total costs for services in connection with administration of the Settlement is $24,968. (*Id.* ¶ 21; *see also* Final Approval Mem. at 15.) The Lechner declaration also explains the efforts Simpluris made to determine the contact information for and to contact Settlement Class Members, which included sending 54,475 class notices via email. (Lechner Decl. ¶¶ 8–10.) Simpluris also sent CAFA notice to the appropriate federal and state officials. (*Id.* ¶ 4.) Having reviewed the Lechner Declaration, the Court finds that Simpluris' request for administration costs is reasonable.

Accordingly, the Court GRANTS the request for $24,9468 in Settlement administration costs.

### V. LITIGATION COSTS

Plaintiff asks the Court to approve reimbursement from the Settlement Fund for litigation costs and expenses in the amount of $5,588.44. (Fees Mot. at 2; Fees Mem. at

6.) "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Sebastian*, 2019 WL 13037010, at *9 (quoting *In re Omnivision*, 559 F. Supp. 2d at 1048). In its motion, Class Counsel represents that the request seeks reimbursement of expenses for courier expenses, postage charges, outside photocopying, travel expenses, court fees, and mediation fees. (Nelson Decl. ¶ 47.) At the hearing, the Court requested additional documentation from Class Counsel substantiating these requests, which Class Counsel then submitted on August 8, 2025. The submitted expense records document fees for filing, service of process, printing, travel, and mediation. (Ex. B to Second Supp. Brief, Litigation Expenses, Doc. 74-2.) They also document costs associated with work performed by one contract attorney, Heather Lopez.[3] (*Id.*) The Court finds the various expenses adequately documented and reasonable.

Accordingly, the Court GRANTS the request for reimbursement of litigation costs and expenses in the amount of $5,588.44.

## VI. ATTORNEYS' FEES

Rule 23 permits a court to award "reasonable attorney's fees … that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. In the Ninth Circuit, the benchmark for a reasonable fee award in common-fund cases is 25% of the recovery obtained. *See id.* at 942. Courts must "justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). "In awarding percentages of the class fund, courts frequently take into account the size of the fund." *Craft v. Cnty. of San*

---

[3] Class Counsel's Expense Report and Billing Records indicate that Lopez initially performed work as a contract attorney on this matter and then transitioned to billing time as an associate for Milberg. (*See* Litigation Expenses; *see also* Ex. A to Nelson Decl. ISO Fees (Billing Summary), Doc. 70-1.)

*Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008).  "Cases of under $10 Million will often result in result in fees above 25%." *Id.* (citing *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 297–98 (N.D. Cal. 1995)); *see also Hardmon v. Ascena Retail Grp., Inc.*, 2022 WL 17572098, at *7 (C.D. Cal. Nov. 29, 2022) (collecting cases approving one-third fees involving smaller settlement funds).

The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).  Counsel's lodestar may also "provide a useful perspective on the reasonableness of a given percentage award." *Id.* at 1050.  A Court may use either the lodestar or percentage fee method to calculate attorney's fees in common fund cases. *Six (6) Mexican Workers*, 904 F.2d at 1311; *see also In re Bluetooth*, 654 F.3d at 942.  In common-fund settlements, because "the benefit to the class is easily quantified," the Ninth Circuit "ha[s] allowed courts to [use the percentage method] in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942. "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

Here, Plaintiff seeks fees in the amount of $158,333.00, which is 33.3% of the total Settlement amount.  (Fees Mot. at 2; Fees Mem. at 7.)  Considering that courts will often grant fees above the 25% benchmark in cases involving smaller funds, and for the following reasons, the Court GRANTS the request.

### A.  Results Achieved

The Settlement Agreement provides for a non-reversionary Settlement Fund of $475,000.  (Settlement Agreement ¶ 16.mm.)  As discussed in the Court's Conditional

14

Preliminary Approval Order, Class Counsel have not analyzed Plaintiff's estimated maximum trial recovery. (Conditional Prelim. Approval Order at 21.) This is because an estimate is difficult to make in cases of this nature as Plaintiff's strongest claims do not involve statutory damages and there is very little data as to what those claims are worth given that the law in this area is uncertain. (*Id.*) Courts evaluating settlements under similar circumstances have found them to be reasonable and adequate, notwithstanding the lack of an estimated maximum trial recovery. *See, e.g. In re Novant Health, Inc.*, 2024 WL 3028443, at *7 (M.D.N.C. June 17, 2024) (approving settlement in a data privacy class action where "[t]he calculation of damages at trial is uncertain given that law in this area is developing."). Furthermore, when moving for preliminary approval of the Settlement, Plaintiff submitted data showing that the per-class member monetary benefit here exceeds payments made in comparable data privacy class action settlements, at least some of which similarly provided for only monetary relief. (Prelim. Approval Mem. at 22–23, Doc. 50-1 (listing cases where the per-class-member recovery was $4.59, $4.81, $4.89, and $6.10).) Considering this comparison, as well as the risks of continued litigation in a developing area of law, the Court found that the value of the Settlement weighed in favor of preliminary approval. (*Id.* at 21–22.) The Court sees no reason to divert from this analysis, and so incorporates it into the present Order. (*See id.*) Accordingly, the Court concludes that monetary recovery obtained here, which results in an award of approximately $8.06 per Class Member, is a good result that weighs in favor of granting Plaintiffs' request for attorneys' fees above the Ninth Circuit's 25% benchmark.

### B. Risk of Litigation

The Court's Conditional Preliminary Approval Order recognized the risks of ongoing litigation in this case. This litigation centers on a developing area of law and Defendants dispute Plaintiff's theory of liability and have indicated a willingness to contest the claims both in litigation and arbitration. (Conditional Prelim. Approval Order at 20–

22.) Defendants also have evidence that the data at issue was not used for improper purposes. (*See* Fees Mem. at 13; *see also* Second Supp. Brief at 2–3.) Furthermore, to achieve recovery at trial, Plaintiff would have to achieve and maintain class certification, which Plaintiff represents would pose significant risks as the damages methodologies in this case have not been tested in a disputed class certification setting. (Fees Mem. at 12–13.) Considering the risks posed by ongoing litigation here, the Court finds that this factor weighs in favor of an upward departure from the standard benchmark.

### C. Skills Required and Quality of Work

As noted above, Class Counsel has achieved an adequate result for the Class, including resolution of the case in just under two years of litigation. However, while Class Counsel were surely competent, the docket reflects multiple instances in which they failed to provide the Court with all requisite information or properly present the issues, thus requiring several supplemental filings at the preliminary approval stage. While Plaintiff adequately responded to the Court's concerns regarding his first motion for preliminary approval in a supplemental briefing, the Court had to issue two separate Orders to Plaintiff regarding required changes to the class notice before such changes were properly implemented. (*See* Docs. 64, 66.) In light of the above, the Court finds that this factor weighs against granting an attorneys' fees award above the Ninth Circuit's 25% benchmark.

### D. Contingent Nature of the Fee

Class counsel spent 337.1 hours litigating this case over the course of 18 months of litigation. (Fees Mem. at 14; *see also* Nelson Decl. ¶ 10; Billing Summary.) Class Counsel received no payment for their services during the litigation and paid for all litigation costs. (Fees Mem. at 14.) "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *Monterrubio*, 291 F.R.D. at 457 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir.

1994)).  Given that this litigation centers on a developing area of law, as well as the number of hours Class Counsel committed to the litigation, the Court finds that this factor weighs in favor of a fee award above the 25% benchmark.

### E. Lodestar Cross-Check

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050.

Here, sixteen attorneys and various paralegals from the law firms of Chestnut Cambronne PA, Milberg, and Markovits worked on this matter for a total of 337.1 hours as of May 7, 2025, for a total of $207,782.40 in fees.  (*See* Billing Summary; Nelson Decl. ¶ 39.)  Class Counsel's request for a fee award at 33.3% of the settlement represents a .76 negative multiplier on its documented lodestar.  (Fee Mem. at 17.)  The lodestar cross check does not lead to the conclusion that an attorneys' fee award of 33.3% is unreasonable.

### F. Conclusion as to Attorneys' Fees Award

As the Court's analysis above explains, both the size of the settlement, the *Vizcaino* factors, and the lodestar cross-check indicate that an upward departure from the Ninth Circuit's 25% benchmark is warranted.  Accordingly, the Court GRANTS Class Counsel's request for attorneys' fees and awards 33.3% of the gross settlement fund: $158,333.00.  However, as discussed below, ten-percent (10%) of the awarded attorneys' fees will be withheld pending further order of the Court following submission of a Post-Distribution Status Report.

### VII.     CLASS-REPRESENTATIVE SERVICE AWARD

The Settlement provides for a service award of $5,000 to Hod for bringing this action as Class Representative.  (Second Amended Settlement Agreement ¶ 67.)

Service awards are "discretionary … and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or

17

reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)). "To assess whether an incentive payment is excessive, district courts balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'" *Monterrubio*, 291 F.R.D. at 462 (quoting *Staton*, 327 F.3d at 977). Courts "must 'evaluate [such] awards individually' to detect 'excessive payments to named class members' that may indicate 'the agreement was reached through fraud or collusion.'" *Id.* (quoting *Staton*, 327 F.3d at 975, 977).

  Class Counsel contends that the service award is warranted because Hod "diligently represented and pursued the interests of the Class," including by "provid[ing] extensive information regarding the harms alleged as a result of the tracking technologies employed by Defendants[.]" (Nelson Decl. ¶ 32.) Hod "also remained in contact with Plaintiff's Counsel throughout the litigation, promptly responding to inquiries for further information[.]" (*Id.*)

  Hod's contributions have undoubtedly helped bring about monetary relief for the entire class. However, this is not a case where the parties engaged in extensive formal discovery or motions practice. "Incentive awards of $5,000 are often granted when named plaintiffs have had to spend more time and effort in prosecuting their cases." *Vu v. I Care Credit, LLC*, 2022 WL 22871480, at *15 (C.D. Cal. Nov. 4, 2022) (collecting cases). Indeed, the cases Class Counsel cites in support of its request for a $5,000 service award required much more of the class representatives than was the case here. Class representatives in *Gaston v. FabFitFun*, were "subject[ed] to the time-consuming demands of discovery." 2021 WL 6496734, at *4 (C.D. Cal. Dec. 9, 2021). The named plaintiffs in *In re Facebook Internet Tracking Litigation* represented the interests of the class "for over a ten year period" and responded to discovery requests. 2022 WL 16902426, at *13 (N.D. Cal. Nov. 10, 2022), *aff'd sub nom. In re Facebook, Inc. Internet Tracking Litig.*, 2024 WL

18

700985 (9th Cir. Feb. 21, 2024). That Hod did not participate in discovery, and that this case was resolved early in litigation prior to fulsome motion practice, distinguishes this case from those cited by Class Counsel.

The Court thus AWARDS Hod a $2,500 service award. This is in line with the amount approved in another case involving alleged ECPA and CIPA violations where class representatives rendered similar contributions as Hod has here. *See Matera v. Google LLC*, 2018 WL 11414641, at *6 (N.D. Cal. Feb. 9, 2018) (approving a $2,000 service award where class representatives "collaborat[ed] and communicat[ed] with Class Counsel" and "monitor[ed] the litigation and review[ed] case filings[.]").

### VIII.     POST-DISTRIBUTION STATUS REPORT

Class Counsel shall file a Post-Distribution Status Report within **twenty-one (21) days** after the substantial completion of distribution of the Settlement to Settlement Class Members who have submitted a claim, payment of attorneys' fees and costs, and payment of the service award to the Class Representative. The status report shall include information on when distributions were made to Settlement Class Members, the number of Settlement Class Members who were sent payments, the total funds distributed, and the average and median distribution to Settlement Class Members, the largest and smallest distribution to Settlement Class Members, the final number and value of cashed and uncashed checks, the number and value of attempted distributions to Settlement Class Members, general information about efforts made to contact Settlement Class Members regarding attempted distributions, any significant or recurring concerns communicated by Settlement Class Members since final approval, the administrative costs, and any other material facts about Settlement distribution. Class Counsel is referred to the Post-Distribution Accounting Form attached in PDF format to the "Orders and Additional Documents" tab of the Court's Procedures Page, which Class Counsel shall fill out in relevant part and submit with its Post-Distribution Status Report. The Court will withhold **10% of the attorneys' fees** granted in this Order until the Post-Distribution Status Report has been filed. Class Counsel shall file a proposed order for release of the remainder of the

fees when they file their Post-Distribution Status Report. At that time, Class Counsel shall also submit a request for any remaining balance in the settlement fund to be distributed through *cy pres* payment to the International Association of Privacy Professionals, which the Court concludes is a proper *cy pres* recipient in this context given its mission to promote and improve the professions of privacy and digital responsibility. *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) (*cy pres* payments are appropriate if they "account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity").

### IX. **CONCLUSION**

The Court finds the settlement to be fair, adequate, and reasonable. Accordingly, the Court GRANTS the Motion for Final Approval of Class Settlement. The Court also GRANTS IN PART the Motion for Attorneys' Fees, Costs, and Service Award. The Court awards Class Counsel $5,588.44 in litigation costs and $158,333 in attorneys' fees, based on an award of 33.3% of the Settlement fund. Ten percent (10%) of such fees awarded shall be withheld pending Class Counsel's submission of a Post-Distribution Status Report within **twenty-one (21) days** after the substantial completion of distribution to Settlement Class Members. Class Counsel shall submit a proposed order for a final distribution of attorneys' fees with its Post-Distribution Status Report. The Court also awards a service payment of $2,500 to Hod. Finally, the Court awards $24,9468 in administration expenses to the Settlement Administrator.

Class Counsel is ORDERED to file a proposed final judgment within **five (5) days** of entry of this Order.

DATED: September 18, 2025

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE